USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/12/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAROLD L. MENDELSON AND MILDRED B. MENDELSON,

                Plaintiffs,

-against-

TOWN OF RHINEBECK NEW YORK, MICHAEL TRIMBLE, ELIZABETH SPINZIA, EDWARD MATUK, GRETCHEN SMITH, JOHN F. LYONS and KIMBERLY A. GARRISON

                Defendants.

24 CV 195 (NSR)

OPINION & ORDER

## OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiffs Harold L. Mendelson and Mildred B. Mendelson ("Plaintiffs") commenced this action on July 5, 2024, against Kimberly A. Garrison ("Garrison") and John F. Lyons ("Lyons") (together, the "Att'y Defs."), and against Edward Matuk ("Matuk"), Gretchen Smith ("Smith"), Elizabeth Spinzia ("Spinzia"), Michael Trimble ("Trimble"), and the Town of Rhinebeck, New York ("Town" or "Rhinebeck") (together, the "Town Defs."). Collectively, those mentioned above are referred to as the "Defendants." Plaintiffs assert five causes of action: (1) violation of 42 U.S.C. § 1983 ("§ 1983") against the Town and Spinzia; (2) fraud and deceit against the Town, Trimble, Spinzia, Smith, Lyons, and Garrison; (3) negligence against the same; (4) trespass against Matuk; and (5) prima facie tort against Matuk, Trimble, Spinzia, Smith, Lyons, and Garrison.

    Presently before the Court are two motions to dismiss Plaintiffs' First Amended Complaint: (1) a motion filed by Defendants Matuk, Smith, Spinzia, the Town, and Trimble (ECF No. 38, Town Defs.' Motion ("Mot.")), and (2) a motion filed by Defendants Lyons and Garrison (ECF No. 41, Att'y Defs.' Mot.).

1

For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

### A. Factual Background

The following facts are primarily drawn from the First Amended Complaint ("FAC") and are accepted as true and construed in the light most favorable to Plaintiffs for purposes of this motion.

On April 25, 2022, Plaintiff Harold Mendelson ("Mr. Mendelson") purchased improved real property at 351 Primrose Hill Road ("Primrose") in Rhinebeck, New York, with the intent to renovate and resell it. (FAC ¶ 10.) Shortly thereafter, Harold applied to the Town of Rhinebeck Building Department for renovation permits. (*Id.*) On or about April 29, 2022, Interim Zoning Enforcement Officer Trimble sent Harold a letter stating that Primrose was designated as a historic site under the Town Code and instructing him to contact Planning Board Secretary Smith to schedule a pre-application meeting before the permit process. (*Id.* ¶ 11.) Under Rhinebeck's zoning regulations, site-plan approval by the Town Board is a prerequisite to issuing any building permit authorizing work on a designated historic structure. *See* Rhinebeck Zoning Law § 125-73(B)(2).

Although Trimble asserted that Primrose was historically designated, Plaintiffs disputed the validity of that classification. (FAC ¶¶ 12, 26, 30, 45.) Following Trimble's correspondence, Mildred Mendelson ("Mrs. Mendelson"), acting on Harold's behalf, contacted the title company, closing attorneys, abstract company, and real estate agents involved in the transaction, all of whom were allegedly unaware that Primrose had been designated as a historic site. (*Id.* ¶¶ 15–17.) On May 24, 2022, Building Inspector Matuk allegedly entered the property without Plaintiffs' consent or knowledge and directed contractors performing air-conditioning repairs to cease work, which Plaintiffs claim caused additional costs and constituted trespass. (*Id.* ¶ 18.) Later that month, Mrs.

Mendelson requested documentation from Trimble verifying Primrose's historic designation, which he allegedly failed to provide. (*Id*. ¶ 21.) After Trimble purportedly failed to produce such records, Mr. Mendelson directed the removal of two crumbling concrete stoops that had supported collapsing, unsafe aluminum awnings at the property. (*Id*. ¶ 22.)

On June 1, 2022, Officer Trimble issued a notice of violation to Plaintiffs, alleging that the ongoing construction (i.e. the removal of the concrete stoops) at Primrose violated the Town Code because the property was designated as a historic site and Plaintiffs had not obtained the required approvals. (FAC ¶ 23.) On June 26, 2022, Mrs. Mendelson submitted a building permit application for the removed structures, which Trimble denied on July 2, 2022, again citing the property's alleged historic designation. (*Id*. ¶¶ 24–25.) Plaintiffs subsequently retained counsel to challenge the denial, believing that Primrose had never been formally designated as a historic site under applicable local law. (*Id*. ¶¶ 12–13, 27.)

On December 19, 2022, tensions between the parties reached a breaking point (FAC. ¶ 28.) That morning, Rhinebeck's Town Supervisor Spinzia emailed Mrs. Mendelson stating that the matter had been referred to outside land-use counsel Grant & Lyons LLP and that all future communications must comply with Town procedures. (*Id.*) Spinzia further advised that Town employees had been instructed not to correspond directly with Plaintiffs and that Mr. Mendelson's title issues would remain unresolved until the permitting issues were addressed. (*Id.*)

Later that day, an in-person exchange occurred at Town Hall between Mrs. Mendelson and Supervisor Spinzia. (FAC ¶¶ 29–32.) Plaintiffs allege that during the meeting, Spinzia requested that Mr. Mendelson deposit an additional $500 into his escrow account due to concerns about Mrs. Mendelson's prior communications with Town staff and stated that the Primrose property was a designated historic site. (*Id.*) Plaintiffs further allege that when Mrs. Mendelson questioned these

statements, Spinzia directed a nearby employee to contact the police, informed her that she was no longer permitted in Town Hall, and closed her office door. (*Id*.) Defendants, by contrast, assert that Mrs. Mendelson refused to leave Spinzia's office, prompting Spinzia to call the police to request her removal. (*See id*. ¶¶ 29–37; Att'y Defs.' Mem. at 2.) A police officer subsequently arrived, proceeded directly to Spinzia's office, and did not engage with Mrs. Mendelson. (*Id*. ¶ 33.) After the incident, Mrs. Mendelson left Town Hall and went to the Rhinebeck Police Department to file a complaint regarding Spinzia's conduct. (*Id*. ¶ 34.)

On February 2, 2023, outside counsel Lyons and Garrison of Grant & Lyons LLP sent Plaintiffs a memorandum ("GL Memo") stating that Primrose was a Town-designated historic structure, historically known as the Ackert Hook School, and outlining the procedures for site-plan review and building-permit issuance. (FAC ¶ 38; Att'y Defs. Mem. at 2–3.) The GL Memo comprised a fifteen-page narrative and 117 pages of exhibits, summarizing Plaintiffs' application history and detailing the steps required to obtain site-plan approval and resolve existing code violations. (ECF No. 39-3, Ex. C at 2–16.)

On March 2, 2023, in response to Plaintiffs' request for records verifying the property's historic designation, counsel provided (i) tax maps; (ii) a list of the Town's designated historic sites—identifying Primrose as No. 12; (iii) Chapter 12 of the Town's Comprehensive Plan; and (iv) Appendix 4 of that Plan, containing the Town's historic-site inventory. (FAC ¶ 42; Att'y Defs. Mem. at 3.) Plaintiffs contend that these materials were inaccurate, and that Primrose was not, in fact, designated as a historic property under the Town's governing documents. (FAC ¶¶ 43–44.)

Shortly thereafter, Lyons and Garrison informed Plaintiffs that the Town had instructed them to discontinue further communications. (*Id*.) In the same correspondence, they directed Plaintiffs back to the GL Memo, which, they stated, contained all information necessary to secure

site-plan approval, obtain the requisite permits, and address the outstanding notice of violation. (ECF No. 39-6, Ex. F.)

On May 24, 2023, Planning Board Secretary Smith also provided Plaintiffs' architect with additional documents reaffirming that Primrose was designated as a historic property, thereby precluding clear title to the premises. (FAC ¶ 47.) Later that same day, however, the Building Department elected not to pursue site-plan approval and issued Harold Mendelson the required building permits and a certificate of occupancy, allowing renovations to the property to proceed. (*Id*. ¶ 50.) Harold Mendelson ultimately sold the property on September 15, 2023, approximately one year and five months after its purchase. (*Id*. ¶ 125.) Despite selling the property, Plaintiffs allege that the Town's earlier misrepresentations delayed construction and caused financial losses through unnecessary compliance efforts, professional fees, and reduced property value. (*Id*. ¶¶ 55–59.)

B. **Procedural History**

As a result of the foregoing events, Plaintiffs filed their initial Complaint on July 5, 2024. (See generally *Compl.*) The Complaint asserted five causes of action arising from the events described above. As against Defendants Lyons and Garrison, Plaintiffs alleged fraud and deceit (Count Two), negligence (Count Three), and prima facie tort (Count Five). (*Id.*) As against the Town, Spinzia, Trimble, Smith, and Matuk, Plaintiffs alleged five causes of action: (1) violations of § 1983 against the Town and Spinzia; (2) fraud and deceit against the Town, Trimble, Spinzia, and Smith; (3) negligence against the same; (4) trespass against Matuk; and (5) prima facie tort against Matuk, Trimble, Spinzia, and Smith. (*Id.*)

On September 16, 2024, Plaintiffs filed their First Amended Complaint ("FAC"). (*See generally* FAC.) The FAC reasserts the same five counts and maintains the same division of claims

5

among the Defendants, adding further factual allegations concerning the Town's alleged mis-designation of Plaintiffs' property as a historic site and subsequent permitting decisions. (*Id.*)

On April 7, 2025, Defendants filed two separate motions to dismiss the FAC: one by Defendants Matuk, Smith, Spinzia, the Town, and Trimble (Town Defs.' Mot.), accompanied by their Memorandum of Law in Support (ECF No. 40, Town Defs.' Memorandum ("Mem.")); and another by Defendants Lyons and Garrison (Att'y Defs.' Mot.) together with their Memorandum of Law in Support. (ECF No. 43, Att'y Defs.' Mem.) Plaintiffs filed an opposition to both motions on May 5, 2025. (ECF No. 44, "Opp.") Defendants thereafter submitted reply briefs. (ECF Nos. 46 & 47, Town Defs.' Reply & Att'y Defs.' Reply.)

## LEGAL STANDARD

### A. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." (*Id.* at 679.) The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." (*Id.* at 679.) A claim is facially plausible when the factual content

pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 678.)

### B. 42 U.S.C. § 1983

Section 1983 provides that every person who, under color of any state law, subjects any citizen of the United States to the deprivation of rights secured by the Constitution and federal laws "shall be liable to the party injured." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by the Constitution and federal statutes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under § 1983, a plaintiff must allege that "(1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see also Castilla v. City of New York*, No. 09 Civ. 5446, 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution"). A defendant's conduct must also be a proximate cause of the alleged violation. *Ross v. Correct Care Solutions*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

Individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation; a defendant may not be held vicariously liable for the acts of others. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Lindsey v. Butler*, 43 F. Supp. 3d 317, 323 (S.D.N.Y. 2014). Municipal liability, in turn, arises only where an official policy, custom, or practice causes the alleged constitutional injury, as § 1983 does not

permit liability on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). To establish *Monell* liability, a plaintiff must show both the existence of a municipal policy or custom and a direct causal link between that policy and the alleged deprivation. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Isolated acts by non-policymaking employees are insufficient; only decisions of final policymakers or actions taken pursuant to official policy may subject a municipality to liability. *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

## DISCUSSION

### A. Plaintiffs' Claim Under 42 U.S.C. § 1983 Fails

i. *Plaintiff Mildred Mendelson lacks standing to bring a 42 U.S.C. § 1983 claim.*

Mildred Mendelson ("Mrs. Mendelson") lacks standing to bring a § 1983 action.[1] To establish Article III standing, a plaintiff must show that she (1) suffered an injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). An injury-in-fact must be concrete, particularized, and "actual or imminent, not conjectural or hypothetical." (*Id.*) The plaintiff bears the burden of establishing these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiff must allege a personal harm rather than a procedural grievance). Following a disagreement at Town Hall in December 2022, Mildred Mendelson alleges that Town Supervisor Spinzia asked her to leave and asserted that police would be called if she refused. (FAC ¶¶ 29–34.) Mrs. Mendelson left voluntarily and later filed a police complaint. (*Id*. ¶ 34.) She now claims her "federally protected rights to freedom of movement and to enter upon public property were violated." (*Id*. ¶¶ 103–106.) These allegations fail to demonstrate any concrete or particularized

---

[1] Notably, Plaintiffs' Opposition is silent as to Plaintiff Mildred Mendelson's lack of standing in this matter.

injury sufficient to confer standing—most fundamentally because Mrs. Mendelson is not the owner of the property underlying the dispute. (FAC ¶¶ 10–11; Mendelson Decl. ¶¶ 5, 9.) The dispute concerns zoning and permitting issues related to 351 Primrose Hill Road, property owned solely by Harold Mendelson.[2] (*Id.*) Any alleged injury from the Town's permitting actions or historic-site classification would therefore be suffered, if at all, by Harold Mendelson, not Mildred Mendelson.

Even assuming *arguendo* that Mrs. Mendelson were the property owner, her allegations still fail to show an injury-in-fact. A one-time verbal request to vacate municipal premises—without physical restraint, a written exclusion, or any ongoing bar to entry—does not amount to an actual deprivation of liberty. *See Lowery v. Carter*, No. 07-CV-7684 (SCR), 2010 WL 4449370, at *3 (S.D.N.Y. Oct. 21, 2010) ("Municipalities are constitutionally permitted to limit access to facilities without impinging on the right to free movement."). Mrs. Mendelson was never formally banned, escorted off the premises, or denied re-entry; the record shows she left voluntarily. Thus, her alleged harm, at most, constitutes a temporary inconvenience, not a cognizable constitutional injury under § 1983 action.

Nor do Mrs. Mendelson allegations implicate a constitutionally protected liberty interest. The Second Circuit has held that while freedom of movement is protected, it "has no bearing on access to a particular place." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008). Therefore, municipalities may lawfully regulate entry to and conduct within public buildings, including restricting individuals from such premises when necessary to maintain order or

---

[2] *See* Mildred Mendelson Declaration, ¶ 5 ("…[Premises], which was purchased by Plaintiff Harold Mendelson…"), ¶ 9 ("Defendants refused to issue a Certificate of Occupancy for [Premises] to Harold.").

operational integrity. Accordingly, the Town's decision to direct Mrs. Mendelson to leave Town Hall did not infringe upon any constitutionally protected right of movement.

Accordingly, Mrs. Mendelson lacks standing to bring a § 1983 claim because she was not the property owner, was neither restrained nor barred from Town Hall, and Spinzia's directive for her to leave was a lawful exercise of municipal authority that did not implicate any constitutionally protected right of movement or access.

      ii. *Plaintiffs Fail to State a Cognizable § 1983 Claim Against the Town of Rhinebeck or Supervisor Spinzia*

Even assuming *arguendo* that Mrs. Mendelson had standing, she has not demonstrated a concrete deprivation sufficient to state a plausible claim under § 1983 against either the Town or Supervisor Spinzia.

      a) The Town of Rhinebeck

Plaintiffs' § 1983 claim against the Town fails because the FAC does not allege any municipal policy, practice, or custom that caused a constitutional deprivation. Municipalities are not vicariously liable under § 1983 for their employees' actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) (§ 1983 liability attaches only where the execution of a government's policy or custom inflicts the injury). To state a viable *Monell* claim, a plaintiff must allege (1) a municipal policy or custom, and (2) a direct causal link between that policy and the alleged injury. *City of Canton*, at 388–89; *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (policy must be the "moving force" behind the violation); *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014) (dismissing claim for failure to allege any official practice or policy). Here, Plaintiffs identify no such policy or causal connection. The FAC's conclusory references to the Town's "failure to adopt a needed policy" and "inadequate

10

training and supervision" (FAC ¶¶ 108–09) are boilerplate allegations routinely rejected by courts. *See Cuevas v. City of New York*, 2009 WL 4773033, at *3 *(*S.D.N.Y. Dec. 7, 2009*)* (dismissing *Monell* claim lacking factual support).

The claim that Supervisor Spinzia "applied an unlawful policy" by "creating a restrictive land-use designation where none existed" (FAC ¶ 86) fares no better. Plaintiffs identify no ordinance, resolution, or official directive adopted by the Town—only a single dispute in which Mrs. Mendelson voluntarily left Town Hall. (*Id.* ¶ 61.) Such isolated incidents of discretionary action cannot establish municipal liability. *See Jones,* at 81. Even if Supervisor Spinzia were deemed a final policymaker, one disagreement with a constituent does not transform her conduct into municipal policy. *See Mumin v. City of New York*, No. 20-CV-7143, 2024 WL 5146085, at *4 (S.D.N.Y. Aug. 23, 2024) (single incident of alleged mistreatment insufficient to establish a municipal custom). Plaintiffs allege no repeated conduct, no deliberate indifference, and no causal link between any training failure and the alleged constitutional deprivation. *See City of Canton,* at 388–89. Plaintiffs rely solely on Mrs. Mendelson's personal experience to claim the Town failed to train its employees on how to interact with individuals at Town Hall. (*Id* ¶ 84.) The FAC cites no comparable incidents or facts suggesting a broader pattern or official policy. *See Igoe v. Village of Red Hook*, 2019 WL 1015174, at *6 (S.D.N.Y. Mar. 4, 2019*)* (plaintiff's reliance on a single incident, without other examples or official involvement, insufficient to state a § 1983 claim). Disagreement with how a Town employee handled a zoning inquiry does not amount to a constitutional violation under § 1983.

Because Plaintiffs allege no Town policy, custom, or deliberate indifference by Rhinebeck officials, their *Monell* claim fails.

          b)    Supervisor Elizabeth Spinzia

The § 1983 claim against Supervisor Spinzia likewise fails. Section 1983 imposes liability only for a defendant's own actions—it does not permit vicarious or supervisory liability. *Ashcroft*, at 676. To state a claim, a plaintiff must show that each government official, "through the official's own individual actions, has violated the Constitution." (*Id.*) Personal involvement may be established only where the defendant directly participated in the alleged violation, created or perpetuated an unconstitutional policy, was grossly negligent in supervision, or exhibited deliberate indifference to constitutional rights. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages."). Supervisory status alone is insufficient. *Lindsey v. Butler*, 43 F. Supp. 3d 317, 323 (S.D.N.Y. 2014). The FAC does not allege that Spinzia engaged in any such conduct. The only factual assertions concerning her are that she asked Mrs. Mendelson to leave Town Hall during a zoning disagreement and later advised Town staff not to correspond with Plaintiffs. (FAC ¶¶ 28–34.) There are no allegations that Spinzia restrained, threatened, or formally excluded Plaintiffs from Town Hall, nor that she acted pursuant to a Town policy or with deliberate indifference to any constitutional right. At most, the FAC describes a single discretionary interaction, which does not constitute a constitutional violation. Nor does the FAC allege that Spinzia acted pursuant to an official Town policy or that she possessed final policymaking authority to restrict access to Town Hall. Absent factual allegations showing that Supervisor Spinzia personally participated in, or was deliberately indifferent to, conduct that violated Plaintiffs' federally protected rights, the § 1983 claim against her cannot stand.

iii. *Plaintiffs Fail to Raise Any § 1983 Claim Against Defendants Lyons and Garrison*

Any suggestion of § 1983 liability against Attorneys Lyons and Garrison fails outright. It is well settled that a plaintiff may not amend a complaint through its motion paper. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("a party is not entitled to amend its complaint through statements made in motion papers"). The FAC limits its § 1983 cause of action to the Town and Supervisor Spinzia and contains no allegations that Lyons or Garrison acted under color of state law or personally violated Plaintiffs' constitutional rights. (FAC ¶¶ 98–115.) Despite this, Plaintiffs improperly attempt to broaden their claims by newly asserting in their Opposition that "Defendants Lyons and Garrison, who are apparently lawyers, … can be held civilly liable … under the Civil Rights Act of 1871" (Opp. at 6–7), codified at 42 U.S.C. § 1983. Because the FAC pleads no federal claim against the Attorneys, the Court need not—and should not—consider this new § 1983 theory raised for the first time in opposition, which is procedurally improper.

Even if such allegations had been properly pleaded in the FAC, any § 1983 claim against Lyons and Garrison would still fail as a matter of law. Lyons and Garrison—private attorneys with Grant & Lyons LLP—are neither state actors nor municipal policymakers, and their representation of the Town does not transform them into government officials for purposes of § 1983. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (private parties are generally not state actors); *Glacken v. Inc. Vill. of Freeport*, No. 09-CV-4832, 2012 WL 894412, at *5 (E.D.N.Y. Mar. 15, 2012) (private attorney retained by municipality was not considered a state actor and did not act under color of state law). Thus, even if such allegations had been properly pleaded in the FAC, Lyons and Garrison are not state actors or government officials; therefore, any potential § 1983 claim against them must be dismissed.

In sum, because the FAC alleges no municipal policy, custom, or personal involvement by any Town official, Plaintiffs' § 1983 claims against the Town of Rhinebeck and Supervisor Spinzia are dismissed without prejudice for failure to state a cognizable claim and lack of standing.

**B. Plaintiffs' State-Law Claims Are Barred for Failure to Comply with New York's Notice-of-Claim Requirements**

The Court finds that all of Plaintiffs' state-law claims—fraud and deceit (Count II), negligence (Count III), trespass (Count IV), and prima facie tort (Count V)—must be dismissed for failure to timely file a Notice of Claim. Under New York law, a plaintiff must serve a notice of claim upon a municipality within ninety days after the claim arises. N.Y. Gen. Mun. Law §§ 50-e and 50-i. A notice-of-claim is a condition precedent to commencing a state-law claim against a municipality or its employees. *Felder v. Casey,* 487 U.S. 131, 151 (1988) ("federal courts entertaining state-law claims against ... municipalities are obligated to apply the [state] notice-of-claim provision."). This requirement is strictly construed, and noncompliance ordinarily requires dismissal. *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Thus, a lawsuit may only encompass conduct occurring within ninety days before service of the notice; earlier events are time-barred. *Stone v. Town of Clarkstown*, 82 A.D.3d 746, 747–48 (2d Dep't 2011). Absent timely notice, Plaintiffs cannot maintain any of the state-law claims asserted here against the Town or its employees acting within the scope of employment. *Stone,* at 747–48 (negligence, nuisance, and trespass); *Fincher v. County of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y.1997) (any tort law claim); S*erkil L.L.C. v. City of Troy*, 259 A.D.2d 920, 922 (1999) (fraud). Here, Plaintiffs' Notice of Claim, dated September 20, 2023, alleged that injury or damage occurred between July 2, 2022, and May 24, 2023—the latest date identified where Rhinebeck's building department issued the building permits and certificate of occupancy for Primrose. (ECF No. 39-1, Ex. A.) Even giving

14

Plaintiffs every benefit, the ninety-day statutory period required that any notice be filed no later than August 22, 2023. Because the Notice was not served until nearly one month later, it was untimely. *See Friedman v. City of New York*, 19 A.D.3d 542, 543 (2d Dep't 2005) (holding that a late notice served without leave of court is a nullity).

In opposition, Plaintiffs argue that dismissal is unwarranted because the Town and its officials had actual knowledge of the facts underlying their claims within the statutory period and thus suffered no prejudice from the late filing. (Opp. at 2.) Plaintiffs maintain that the same Town officials (named as Defendants) were directly involved in the alleged conduct and therefore possessed timely notice of all relevant facts. However, the Court is unpersuaded. Plaintiffs did not seek leave to serve a late Notice of Claim under § 50-e(5), and their allegations of actual knowledge are insufficient to excuse noncompliance absent such application. N.Y. Gen. Mun. Law §§ 50-e(5); *see also Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 62 (1984). Because Plaintiffs failed to file a timely notice of claim, Counts II through V must be dismissed with prejudice.

### C. Leave to Amend

Finally, Defendant asserts that Plaintiffs should not be given leave to amend their First Amended Complaint. (Town Defs. Reply at 12; Atty's Def. Reply at 11.) "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). When exercising this discretion, courts consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiffs leave to file an amended complaint as to those claims dismissed without prejudice. Notwithstanding the above explained deficiencies, Plaintiffs could potentially plead facts that cure their First Amended Complaint's various defects. Although Plaintiffs certainly have high hurdles to overcome, leave to amend in this case would not necessarily be futile at this juncture. Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendants in permitting Plaintiffs to amend.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motions to Dismiss (ECF Nos. 38 and 41). Plaintiffs' state-law claims—fraud and deceit (Count II), negligence (Count III), trespass (Count IV), and prima facie tort (Count V)—are dismissed with prejudice as amendment would be futile. Plaintiffs' remaining § 1983 claims against the Town of Rhinebeck and Town Supervisor Elizabeth Spinzia are dismissed without prejudice, and Plaintiffs are granted leave to file a Second Amended Complaint ("SAC"). If Plaintiffs choose to file a SAC, they must do so by December 8, 2025. Defendants shall answer or otherwise respond by December 30, 2025. If Plaintiffs fail to timely amend and cannot show good cause for such failure, any claims dismissed without prejudice herein may be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 38 and 41.

Dated: November 12, 2025
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge